### Frank Romano, Jr., by Frank Romano, Sr., Appellee, v. Rockford City Traction Company, Appellant.

### Gen. No. 7,122.

STREET RAILWAYS—*conclusiveness of verdict against railway in personal injuries case.* A verdict against a street railway company for damages for injuries sustained by a five-year-old child who was run over by a car will not be reversed on appeal as manifestly against the weight of the evidence, which is conflicting on substantially every material point, and where testimony of an eye witness that the car struck the boy as he was trying to cross the track in plain view of the conductor is supported by the physical facts and conditions, and that of other witnesses that the boy was hanging to a truss rod and fell under the car is contradicted by the physical facts and inconsistent with the movement of the car and the extreme youth of the child, and where if he had been on the truss rod he would have been visible to the conductor as he flagged the car across a railroad crossing, though he was not seen there by the conductor, and two juries have held against defendant on the same state of facts.

Appeal by defendant from the Circuit Court of Winnebago county; the Hon. E. D. SHURTLEFF, Judge, presiding. Heard in this court at the October term, 1922. Affirmed. Opinion filed August 13, 1923.

FISHER, NORTH, WELSH & LINSCOTT, for appellant.

ROY F. HALL and J. E. GOEMBEL, for appellee.

MR. JUSTICE JETT delivered the opinion of the court.

The appellee obtained judgment for $10,000 in the circuit court of Winnebago county against appellant, from which judgment this appeal is prosecuted.

The only ground urged for reversal of this cause is that the judgment is not sustained by the evidence. Appellant operated a single-track street car line running east and west along the south side of 15th avenue, in the City of Rockford. The Chicago, Burlington and Quincy Railroad tracks crossed 15th avenue and the street car track at right angles, and a short distance east of the crossing was a switch track which also crossed at right angles the track of appellant. The surroundings of the locality at the time of the injury were as follows:

On the north side of the avenue and immediately to the west of the railroad right of way was what was known as the property of the Wilson Bottling Works. Buildings had been constructed on this property and facing the avenue there was a platform extending out to the street line. To the west of the Bottling Works, and as a part of it, there was an alley or entryway running to the back part of the premises of the Bottling Works. On the south side of the avenue a short distance west of the C., B. & Q. track and on the right of way was a path extending parallel to the railroad, running north and south. Just west of the right of way was a public way, either an alley or a narrow street, running also parallel with the railroad track, and entering 15th avenue almost directly across the avenue from the alleyway going to the rear of the Wilson Bottling Works on the opposite side of the street. To the west of the alley or narrow street above mentioned there was a block of ground the size of the ordinary city block, which extended to what is known as Keefe street. According to the testimony there was one house on this block.

On Sunday afternoon at about two o'clock on the

3rd day of June, 1917, an interurban car was being backed west over said 15th avenue across the railroad tracks to a ball park. The motorman was on the east end of the car while the conductor was on the west end watching the trolley. The car in backing stopped at the tracks of the said railroad company, and the conductor got off and went onto the tracks to see whether a train was coming, and thereupon signaled the motorman to cross the tracks. Shortly after the car had crossed the tracks, appellee, a boy four years and nine months of age, was run over by the car and both limbs were cut off. Neither the motorman nor conductor saw him until after the car had passed over him. The question in this cause is as to the manner in which appellee received the injury. The negligence charged in the declaration is that the appellant, by its servants, so negligently, carelessly and improperly ran, drove, managed, operated and controlled its car at the time and place in question that by and on account of the said neglect and carelessness the car ran into and upon Frank Romano, Jr., and thereby injured him. There are two theories as to how appellee received the injury. Appellant insists that the boy was hanging on a truss rod, a rod beneath the car, and that the servants did not know and could not know that he was there. Therefore, there was no neglect on their part.

The theory of appellee is that two children were playing in the street about 50 feet from where appellee was injured, and when they saw the interurban car coming they started to run across the avenue and get back on the side of the avenue where appellee lived; that in running the 50 feet the children were in plain sight of anyone on the car whose duty it was to observe the track and street. The point where appellee was injured was across the avenue from the driveway or alley that runs north and south to the west of the Wilson Bottling Works. Keefe street was about 100 feet west of where he was lying. The street car was

half a block west of the railroad tracks when it passed over the limbs of appellee.

The testimony varies as to how far the car ran after it injured appellee until it stopped. On this appeal appellant argues only one question—that the evidence is not sufficient to sustain the judgment. Appellee called a witness by the name of William Knapp, who testified, among other things, "that appellee and another boy were playing to the north of the track, in front of the Wilson Bottling Works, and that they started to run across the track; that they were 10 or twelve feet from the Wilson Bottling Works when they started to run; that they ran across the avenue and across the track; that the larger boy got across, and the Romano boy, being smaller, did not quite make it, but that some part of the car hit him as he was crossing the south rail and knocked him down to the ground, and the car ran over his feet." "With my own eyes I saw the front wheel of the car run over the child; then the next wheel; four wheels ran over the child's legs; did not see the boy hanging on the truss rod."

On behalf of appellant, two witnesses, Sixten and Edman, testified to seeing the boy on the truss rod. The witness, Sixten, lived in South Dakota and his deposition was read at the trial. Both of them testified that "they were walking west on the south side of the street just west of the railroad track, and that as the car passed them they saw appellee hanging to the south side of the car from a truss rod which extended along the south side of the car right close to the south edge thereof; that the boy had hold of this rod, which was 30 inches from the ground, and that he was hanging by his hands and raising his feet off the ground; that as the car passed these two witnesses, Sixten ran out into the street for the purpose of rescuing the boy from his position, and that he almost reached the boy when the boy let go and fell un-

der the car, and the east trucks on the south side of the car passed over him."

The evidence shows that appellee lived almost a block east of the railroad crossing and on the south side of 15th avenue; that the mother of appellee had, but a short time previous to the injury received by him, dressed him and he went out to play; that within fifteen minutes from the time he left the house she learned he had been injured.

From the argument of appellant, we take it liability is not denied if the injury was occasioned as insisted by appellee. If the jury believed the testimony on the part of appellee they had a right to find for him, and in order to determine the question whether or not the court erred in denying the motion for a new trial and in rendering judgment on the verdict of the jury it will be necessary to refer to what is disclosed by the record in this cause.

The track on which the car was being operated was on the south side of 15th avenue, a public street in the City of Rockford. The Wilson Bottling Works was on the north edge of the avenue. It was 60 feet from the north edge of the avenue to the north rail of the street car track. The track is 4 feet, 8½ inches in width. The witness, Knapp, testified that the boy was 10 or 12 feet from the Bottling Works when the car was at the railroad crossing, 125 to 150 feet away. About the time the car started, the boy started to run across the street. This statement of Knapp would place the boy in the neighborhood of 50 feet from the north rail of the track when he started towards the track to go across, and to get on the south rail of the track he would have had to travel 52 feet or thereabouts in an open street. The conductor of appellant stated there was nothing to obstruct his view of the avenue and track. The car which struck appellee was a heavy interurban car, backing up to the west with the motorman in the east end of the car. The car was

traveling, according to the theory of appellant, not to exceed 8 to 10 miles per hour. Witnesses for appellant stated the car could have been stopped in 6 or 8 feet. According to the testimony of Sixten, it was stopped in 6 or 8 feet after running over the boy. Knapp stated it ran about 70 feet after running over the boy.

If it be true this boy went to cross this track, with nothing to obstruct the view of the employees of appellant down the track in the direction in which the car was being backed, and they ran over him under the circumstances as claimed by appellee, then there can be no question of the liability on the part of appellant.

This was the second trial of this case. The cause had been previously tried and the finding had for appellee, in which the jury assessed appellee's damages at $15,000. A new trial was granted on motion of appellant. It appears from the record in this cause that the witness, Holderman, who was the conductor on the car in question, was not a witness on the first trial; that in the motion for a new trial that fact was set up and the things about which he would testify. On the second trial the deposition of Holderman was read, and, among other things, stated: "That from the time the car left Kishwaukee street, and while the car was moving west on 15th avenue he was on the back end of the car looking out of the window and holding the trolley; he was signaling to the motorman by the use of the bell; he stopped at the railroad crossing; he flagged the crossing and then climbed on the car and gave the motorman the bell and that was all there was to it; when they stopped, the street car was on the east side of the intersection track of the C., B. & Q. R. Co.; that he got off on the north side; he went west and looked north and south to see if any trains were coming; when he walked to the track from the street car he was facing west; that as he looked up and down the C., B. & Q. track he turned around and went

back and got on the car on the same side from which he had alighted.'' It would appear that the conductor was in a position, if he had been making any observation of the surroundings of the car, to see if anyone was on the truss rod of the car. The interurban car extended from 20 to 24 inches outside of the inside of the rail. The truss rod was 6 or 8 inches inside of the outside edge of the car. If this boy was hanging on the truss rod he necessarily must have been there before they reached the C., B. & Q. tracks, backing westward. The question arises, when did he get there? They say they stopped for this crossing just for a moment. Where was the boy before he got on the truss rod? He necessarily would have had to operate quickly to have moved from some place where they could not see him at any time before the injury. The fact being that this boy was injured within fifteen minutes from the time his mother had dressed him and let him out of the door of her home certainly indicates that the boy could not have gone as far as where the car entered 15th avenue on its way backing to the ball park. If the conductor, as he states he was doing, was observing the avenue as they backed the car, and did not see appellee from the time he reached the crossing, if he walked around the car as he claims to have done, and looked up and down the track and did not see anything of this boy, these facts, in our opinion, tend to sustain the theory of appellee as to how the injury was received.

So far as anything in this record discloses, there was no stop of this car from the time it came into 15th avenue, backing westward towards the ball park, until it reached the switching track. There the conductor flagged the crossing. They moved across the switching track, stopped the car within 15 or 20 feet of the main track of the C., B. & Q. when the car again stopped and the conductor flagged the crossing, and during all this time did not see appellee. How, then,

could this child, four years and nine months old, have reached and secreted himself under the car, as it is claimed by appellant, when the car was moving from the time it came into 15th avenue, except when they stopped for the respective crossings. He was not seen by the employees at the time of flagging the crossings nor at any time until after the car had passed over his limbs. The fact that the car did not stop until it reached the crossing, and the further fact that the conductor on the rear end of the car did not see appellee as they backed the car, lends support to the contention of appellee.

Walter Smith, the motorman on this car, testified on the part of appellant, "that on 15th avenue on the afternoon of June 3rd, 1917, he stopped the car at the switching tracks of the railroad company, and the conductor flagged the crossing; that he stopped in between the tracks for the west crossing, started up and after he had gone about 50 or 60 feet from the main track of the railroad company someone holloed. · He looked around and saw the boy lying on the south side of the track about 30 or 40 feet from the car. The car was moving backwards. Holderman was on the west end of the car; the two railroad tracks that cross 15th avenue are about 40 to 50 feet apart; while the flagging was being done, the car was 15 or 20 feet east of the main track; did not see the boy until after the car ran over him."

Appellant's whole theory in this case is based upon the claim that Sixten was right close to the scene of the accident. Their witnesses state that he pointed towards the boy hanging on the rod. Edman, the other witness, stated Sixten was within 5 feet of the boy when he dropped. Both of these witnesses state Sixten went to rescue him before he let go and Sixten states he was within one step of doing it. The conductor of appellant states he saw Sixten and Edman pointing to the car and that he immediately gave the

bell to stop and the car stopped within 6 or 7 feet and the men who were pointing were then half a block away from the car.

The appellant, to support its contention, seeks to establish, by proving by its employees who were handling the car, that there were hand prints on the truss rod. On an examination of the testimony of these witnesses it would appear that they do not agree as to the particular point on the truss rod where the alleged hand prints were said to have been found.

The result of this cause depends largely on the testimony of the witness, Knapp. The witnesses for appellant do not appear to have observed Knapp being present at the place where appellee received his injury. Of his presence, however, from the testimony in this case, there can be no doubt. In fact, Knapp is corroborated in a number of circumstances. He says that the boy was about half a block from the railroad track when he was run over; a witness by the name of Ralph Johnson, on whom no attack seems to have been made by appellant, stated that the boy was between 125 to 150 feet from the tracks at the time he went to him, and he found Knapp tying up the boy's leg. Knapp stated that the boys were over in front of the Wilson Bottling Works and started to run across the street. This agrees with where Johnson says the boy was immediately after the injury, the boy having been moved by no one except the conductor. Knapp testified that some one brought some water in a tin bucket; the motorman of appellant corroborates Knapp in this respect as he, too, saw some one bring a pail of water. Knapp states that he ran at once to the boy and as soon as possible tied up one leg with his own handkerchief, and asked another man for a handkerchief with which to tie up the other leg. Johnson corroborates Knapp at this point. There are other instances where it appears to us, as disclosed by the evidence in this case, that tends to corroborate the witness, Knapp.

From all of the evidence in the case there can be no conclusion reached other than that the testimony is conflicting. The testimony on the part of appellee was sufficient to authorize the submitting of this case to the jury, and standing alone would sustain a recovery.

When the record is in the condition in which we find this one, the question then is what is the rule of law applicable to such a state of facts? As heretofore stated, two juries have passed upon the facts in this case; in each instance a finding was in favor of appellee.

We understand the rule to be that where two juries have found the issues the same way, on conflicting evidence, the trial or Appellate Court should be slow to set aside the verdict of the jury. *Meier v. Cleveland, C., C. & St. L. Ry. Co.*, 206 Ill. App. 286.

Where evidence is conflicting and two juries have found in favor of plaintiff's contention, the verdict will not be disturbed on appeal, on the ground that it is contrary to the manifest weight of the evidence. *Merrill v. Merrill*, 215 Ill. App. 602-604.

Where the evidence was conflicting and two juries have heard it and found the facts the same way, and there is evidence tending to sustain the findings, the judgment will not be reversed on the facts. *Bates v. Danville St. Railway & Light Co.*, 190 Ill. App. 486.

In the case at bar, the only question raised in the argument, by appellant, and insisted upon, is that the finding of the jury was against the manifest weight of the evidence. On an appeal, where the only question raised in the record is whether the findings were against the manifest weight of the evidence, and the court cannot say that the evidence, which is conflicting, manifestly preponderates against the findings, the judgment will be affirmed. *Phelan v. DeKalb Wagon Co.*, 192 Ill. App. 519; *Kirk v. Meinshausen*, 192 Ill. App. 523.

The jury and trial judge are in the best position to

consider and pass upon the question of the credibility of the testimony, and the findings of the jury, approved by the trial judge, should not be disturbed on appeal unless they appear to be manifestly against the weight of the evidence. *Freeman v. Chicago & J. Elec. Ry. Co.,* 208 Ill. App. 350.

Where questions of fact are passed upon by a jury properly and fully instructed as to the law, and a motion for new trial is considered and refused by the trial court, the verdict will not be disturbed as against the weight of the evidence, on appeal, unless it is clearly so on some essential issue involved. *Kumorowski v. Armour & Co.,* 198 Ill. App. 306-311.

Applying the rules as herein announced, and as have been frequently held, we are not prepared to say that the verdict of the jury is manifestly against the weight of the testimony. When all the facts and circumstances are considered, we are of the opinion the finding of the jury cannot be said to be against the manifest weight of the evidence. On the contrary, taking the testimony as a whole, it sustains the finding.

It will be observed that appellee was under the age of five years; negligence is not imputable to him. One necessarily is compelled to draw upon his imagination in order to reach the conclusion that a child less than five years of age could place himself in such a position that he could run and catch a moving car, and hang on to the truss rod thereunder, and do all this without being observed or noticed by the employees of appellant, under the circumstances as are disclosed in this record.

It will be remembered that no one on the part of appellant undertakes to say where this child came from immediately before getting under this car, but, from the testimony of the witnesses for appellant, he would necessarily have to go under the car and take hold of the truss rod while the car was moving. We conclude, from the testimony, appellee was not holding on the truss rod in question as insisted by appellant.

On the whole, we are of the opinion that the finding of the jury and the rendering of the judgment thereon should be sustained. Especially so since that finding has been approved by the trial judge, and two juries have found the same way upon substantially the same state of facts.

The judgment of the circuit court of Winnebago county is affirmed.

*Judgment affirmed.*